UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| CHRIS SZIBER, Individually and for Others Similarly Situated, | Case No. 3:20-cv-00117-JAG |
| Plaintiff, | Collective Action |
| v. | Jury Trial Demanded |
| DOMINION ENERGY, INC., | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF THE CONSENT MOTION FOR APPROVAL OF FLSA SETTLEMENTS

**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
**Richard M. Schreiber**
Texas Bar No. 24056278
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@ mybackwages.com
rschreiber@ mybackwages.com

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Harris D. Butler**
VSB No. 26483
**Zev H. Antell**
VSB No. 74634
**BUTLER CURWOOD, PLC**
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone (804) 648-4848
Facsimile (804) 237-0413
harris@butlercurwood.com
zev@butlercurwood.com

**ATTORNEYS FOR PLAINTIFFS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................ II

I.    INTRODUCTION AND SUMMARY ........................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

III.  SUMMARY OF THE SETTLEMENT TERMS. ........................................ 4

      A.    The Terms Pertaining to Compensation and the Release of Claims Are Reasonable and Should Be Approved ................................................ 4

      B.    The Settlement Administration and Distribution Provisions Are Fair and Reasonable, and Should be Approved ................................................ 5

      C.    Negotiating the Settlement Checks as Consent to Join FLSA Collective Action Settlement is Common Practice ................................................ 6

IV.   THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT. ................................................................ 7

      A.    A *Bona Fide* Dispute Exists ................................................................ 8

      B.    The Proposed Settlement is Fair and Reasonable ............................... 9

            1.    The Amount of Discovery Engaged in by the Parties ............ 10

            2.    The Stage Of The Proceedings ............................................. 10

            3.    There is No Evidence of Fraud or Collusion ......................... 10

            5.    The Opinions of Class Counsel and Class Representative ...... 11

            6.    The Likelihood of Success on the Merits and the Amount of the Settlements in Relation to the Potential recovery ............... 12

V.    ATTORNEYS' FEES ARE REASONABLE ............................................. 14

VI.   THE REQUESTED SERVICE AWARD SHOULD BE APPROVED. ....... 16

VII.  CONCLUSION. .................................................................................... 17

# TABLE OF AUTHORITIES

PAGE(S)

Cases

*Besic v. Byline Bank, Inc.*,
  No. 16 C 8003, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015)........................................................6, 7
*Blanchard v. Forrest*,
  CIV. A. 93-3780, 1996 WL 28526 (E.D. La. Jan. 23, 1996)........................................................15
*Brooklyn Savings Bank v. O'Neil*,
  324 U.S. 697 (1945)........................................................7
*Camp v. Progressive Corp.*,
  2004 WL 2149079 (E.D. La. Sept. 23, 2004)........................................................7
*Cerrato v. Durham Pub. Sch. Bd. of Educ.*,
  No. 1:16CV1431, 2017 WL 2983301 (M.D.N.C. Mar. 17, 2017)........................................................5, 6
*Devine v. City of Hampton*, at *41 (E.D. Va. Dec. 1, 2015).
  2015 WL 10793424........................................................14
*DeWitt v. Darlington Cty., S.C.*,
  No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *14 (D.S.C. Dec. 6, 2013)........................................................16
*Edelen v. Am. Residential Servs.*,
  Civ. A. No. DKC-11-2744, 2013 WL 3816986 (D. Md. July 22, 2013)........................................................6
*Evans v. Jeff D.*,
  475 U.S. 717 (1986)........................................................15
*Flinn v. FMC Corp.*,
  528 F.2d 1169 (4th Cir. 1975)........................................................9, 10
*Gagliastre v. Capt. George's Seafood Rest., LP*,
  2:17CV379, 2019 WL 2288441 (E.D. Va. May 29, 2019)........................................................7, 11, 14
*Hoffman v. First Student, Inc.*,
  No. CIV. WDQ-06-1882, 2010 WL 1176641 (D. Md. Mar. 23, 2010)........................................................16
*Hooker v. Sirius XM Radio, Inc.*,
  No. 4:13-CV-003, 2017 WL 4484258 (E.D. Va. May 11, 2017)........................................................15
*In re Domestic Air Tranp. Antitrust Litig.*,
  148 F.R.D. 297, 325 (N.D. Ga. 1993)........................................................13
*In re Newbridge Networks Sec. Litig.*,
  1998 WL 765724 (D.D.C. Oct. 23, 1998)........................................................13
*In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20*,
  2010, 910 F.Supp.2d 891 (E.D. La. 2012)........................................................15
*In re Ravisent Techs., Inc. Sec. Litig.*,
  2005 WL 906361 (E.D. Pa. Apr. 18, 2005)........................................................13, 14
*In re The Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009)........................................................10, 12
*Kirkpatrick v. Cardinal Innovations Healthcare*,
  *Sols.*, 352 F. Supp. 3d 499 (M.D.N.C. 2018)........................................................14, 16
*Klier v. Elf Atochem North Am., Inc.*,
  658 F.3d 468 (5th Cir. 2011)........................................................15
*Lazy Oil Co. v. Witco*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997)........................................................12

*Lomascolo v. Parsons Brinckerhoff, Inc.,*
    1:08CV1310(AJT/JFA), 2009 WL 3094955 (E.D. Va. Sept. 28, 2009)............................7, 9

*Lyle v. Food Lion, Inc.,*
    954 F.2d 984 (4th Cir. 1992) ...........................................................................................14

*Lynn's Food Stores, Inc. v. U.S.,*
    679 F.2d 1350 (11th Cir. 1982)..........................................................................................7

*McCurley v. Flowers Foods, Inc.,*
    No. 5:16-CV-00194-JMC, 2018 WL 6650138 (D.S.C. Sept. 10, 2018) ...........................16

*Melgar v. OK Foods,*
    902 F.3d 775 (8th Cir. 2018) ...........................................................................................16

*Ortiz v. Chop't Creative Salad Co. LLC,*
    No. 13 Civ. 2541(KNF), 2014 WL 1378922 (S.D.N.Y. Mar. 25, 2014)............................6

*Poulin v. General Dynamics Shared Resources, Inc.,*
    No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) ...........................14

*Seghroughni v. Advantus Rest., Inc.,*
    No. 8:12-cv-2000-T-23TBM, 2015 WL 390329 .............................................................6

*Shaver v. Gills Eldersburg, Inc.,*
    No. 14-3977-JMC, 2016 WL 1625835 (D. Md. Apr. 25, 2016) ......................................16

*Shaw v. Toshiba America Information Systems, Inc.,*
    91 F. Supp. 2d 942 (E.D. Tex. 2000) ...............................................................................13

*Silva v. Miller,*
    307 F. App'x 349 (11th Cir. 2009) ...................................................................................14

*Winingear v. City of Norfolk, Va.,*
    2:12CV560, 2014 WL 3500996 (E.D. Va. July 14, 2014) ...........................................12, 14

*Wong v. Accretive Health, Inc.,*
    773 F.3d 859 (7th Cir. 2014) ...........................................................................................13

**Statutes**

29 U.S.C. 201 ............................................................................................................................2
29 U.S.C. § 216(b) ...................................................................................................................14

## I.    INTRODUCTION AND SUMMARY

Christopher Sziber, on behalf of both himself and others similarly situated and Dominion Energy, Inc. (Dominion) (collectively, the "Parties") have reached a Settlement Agreement in this Fair Labor Standards Act ("FLSA") lawsuit (the "Action"). Two settlements totaling $1,450,000.00 were reached with the assistance of Anne Marie Estevez, a preeminent FLSA collective action mediator, and was the result of three mediations, arm's-length negotiations conducted by experienced counsel for all Parties after formally and informally exchanging substantial information, issuing subpoenas, and motion practice over the course of two years. The terms of the settlement are reasonable, appropriate, and fair to all Parties and individuals involved.

The Parties' First Settlement Agreement (the "First Settlement Agreement") covers Sziber and up to 55 opt-in Plaintiffs who joined this Collective Action during the notice period (collectively, "Plaintiffs").[1] Ex. A. Plaintiffs are inspectors who worked on Dominion projects during the Class Period and were paid a day rate. These claims were resolved for the gross settlement amount of $500,000.00. *Id.*

The Parties' Second Settlement Agreement (the "Second Settlement Agreement") covers Sziber, Robert Dively, and 13 prospective collective members identified at the mediation of this matter as day-rate opt-ins subsequent to the notice period, and an additional 235 BJI inspectors ("Settlement Class Members"). Ex. B. These claims were resolved for the gross settlement amount of $995,000.00. *Id.*

If the First Settlement Agreement is approved, the Plaintiffs will receive a Settlement Check with their pro rata share of the $500,000.00. If the Second Settlement Agreement is approved, Settlement Class Members will receive a notice explaining the nature, terms and scope of the

---

[1] This excluded Opt-in Plaintiffs who were part of a separate settlement with QIS which released Dominion.

Settlement, along with a negotiable check representing the amount of compensation they are due. A third-party settlement administrator, Simpluris ("Administrator"), agreed to by the parties will manage all disbursements of the settlement fund. Those Plaintiffs and Settlement Class Members who negotiate their checks will release their wage and hour claims. Settlement Class Members will have 120 days to execute and deposit their check. The Plaintiffs will release Dominion, pursuant to the First Settlement Agreement, by negotiating the settlement checks. The Settlement Class Members will release Dominion and BJI Inspections, Inc. (BJI), pursuant to the Second Settlement Agreement, by negotiating the settlement checks. If the settlement checks go unexecuted, the Plaintiffs and Settlement Class Members will retain all of their wage and hour claims.

As shown below, the Parties' Settlement is a fair and reasonable resolution to a *bona fide* dispute between the Parties regarding the Settlement Class Members' classification status under the FLSA. The Parties respectfully move the Court to approve the Settlement and permit the Parties to effectuate its terms using the forms and procedures set forth in their Agreements. Further, the Parties seek Court approval of the following payments: (1) a Service Award to Named Plaintiff Christopher Sziber in the amount of $20,000; (2) a Service Award to Opt-in Plaintiff Kenneth Gibbons in the amount of $5,000; (3) a Service Award to Opt-in Plaintiff Robert Dively in the amount of $5,000; (4) Attorneys' Fees in the amount of $573,000.00; and (4) the payment of out-of-pocket costs incurred by Class Counsel which are capped at $50,000.00, inclusive of the Settlement Administrator's costs related to administering this Settlement. Finally, the Parties ask that the Court dismiss with prejudice the claims against Dominion and its subsidiaries in this matter, brought by Sziber on behalf of himself and all others similarly situated, in accordance with the Parties' proposed order.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On February 20, 2020, this Action was filed, alleging that Dominion violated the FLSA *See* Doc. 1. On July 13, 2020, Sziber amended the Complaint and became the named Plaintiff. *See* Doc.

23.  Dominion served its Answer on July 27, 2020. *See* Doc. 25.

Sziber alleged that Dominion failed to pay the Plaintiffs and Settlement Class Members overtime as required by the FLSA. *See* Doc. 25. Sziber claims that these inspectors were paid a day rate with no overtime while performing work on Dominion projects. *Id.* Sziber further alleges he and the similarly situated class members regularly worked more than 40 hours in individual work weeks without receiving any overtime wages for the hours they worked in excess of 40 hours in violation of the FLSA. *Id.* Dominion has, at all relevant times, disputed that it or its subsidiaries violated any law. Dominion asserts that its pay practices are fully compliant with applicable law and that the potential class members were not employees of Dominion. *See* 34. Both Parties conducted extensive formal and informal discovery regarding the claims and defenses at issue, certification, and damages. Ex. C, at ¶¶12-14. Class Counsel and Dominion sent out numerous subpoenas to vendors in an attempt to gather data for the potential class members. *Id.* Further, the Parties engaged in extensive contested motion practice. *Id.*

On March 23, 2021, the Parties mediated with an experienced wage-and-hour mediator, Anne Marie Estevez. Following mediation, the Parties were able to reach an agreement to settle this matter, and entered into a Memorandum of Understanding on March 23, 2021. After reaching a settlement in principal, the Parties engaged in prolonged negotiations relating to the specific terms of the Agreement, exchanging numerous drafts of the same, before ultimately finalizing the First Settlement Agreement in June 2021.

During this process, the Parties discovered that potential class members did not receive notice of their option to join the collective action. The Parties continued to investigate the additional claims, potential exposure, and exchanged discovery and damage models. The Parties mediated two more times and eventually came to an MOU on November 16, 2021 that formed the basis of the Second Settlement Agreement.

These Agreements will release Dominion and its subsidiaries, as well as BJI (if the Settlement Class Members was staffed to Dominion by BJI), from the FLSA claims alleged in this litigation and state wage and hour claims.

## III.    SUMMARY OF THE SETTLEMENT TERMS.

### A.  The Terms Pertaining to Compensation and the Release of Claims Are Reasonable and Should Be Approved

The proposed settlement obligates Dominion to pay a maximum settlement amount to settle the claims in this Action ("Gross Settlement Amount") by issuing checks to all Plaintiffs and Settlement Class Members. *See* Exs. A, B. In both settlements, the Gross Settlement Amount covers all wage and hour claims (including related claims for attorneys' fees and costs), settlement administrative costs, and service awards for the representative Plaintiff and two Opt-ins. The "Net Settlement Amount" represents the settlement proceeds that remain after these identified deductions are taken from the Gross Settlement Award.

In both settlements, the Net Settlement Amount will be divided among the Settlement Class Members on a pro rata basis based on each individual Class Members' compensation received and weeks worked on behalf of Dominion or its subsidiaries during the relevant time period. In exchange for these monetary awards and the other consideration detailed in the Parties' Settlement Agreements: (1) in the First Settlement Agreement, Plaintiffs who timely negotiate the settlement award check shall release Dominion and its subsidiaries from the following, as defined in the Agreement: all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees that were or could have been asserted in the Action based on allegations of unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under the FLSA and state wage and hour claims, in accordance with the respective Class Period, for weeks in which the individual claimed to have worked for Dominion; and (2) in the Second Settlement Agreement, the Settlement Class Members who timely negotiate the

4

settlement award check shall release Dominion and its subsidiaries, and BJI, from the following: all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees that were or could have been asserted in the Action based on allegations of unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under the FLSA and state wage and hour claims, in accordance with the respective Class Period, for weeks in which the individual claimed to have worked for Dominion. Potential claims against Staffing Companies other than BJI for the time periods the Plaintiffs and Participating Plaintiffs were staffed to Dominion are not released.

Only those Plaintiffs and Settlement Class Members who elect to negotiate the settlement award check will be bound by the terms of the Settlement Agreements. In contrast, the rights of those Settlement Class Members who do not affirmatively choose to negotiate a check under the Parties' Settlement Agreement will not be impacted.

### B. The Settlement Administration and Distribution Provisions Are Fair and Reasonable, and Should be Approved

Under the Settlement Agreements' terms, as soon as able and if not already done, Dominion will begin to undergo reasonable efforts to gather and provide the Settlement Administrator and Class Counsel with the names, last known addresses, last known telephone number, social security number, last known email addresses (if any), dates of employment, and updated payroll information for each Settlement Class Member during the applicable Class Period (the "Class List"). Within thirty (30) days after the entry of the Effective Date, Dominion will ensure that the Gross Settlement Amount is wired to the Settlement Administrator.

Within five (5) business days after receiving the contact information for the Settlement Class Members, the Settlement Administrator will mail and email (if available) an agreed upon and approved Notice, along with a settlement check, to each Settlement Class Member. The email will include a scanned copy of the Notice and settlement check contained as an attachment.

One-half of the settlement awards payable to each Plaintiff and Settlement Class Member shall be deemed payment of alleged unpaid wages, subject to appropriate payroll withholdings, and reported on an Internal Revenue Services ("IRS") Form W-2. The remaining half of the settlement awards shall be deemed compensation for alleged liquidated damages under the FLSA, shall not be subject to withholding for payroll taxes, and shall be reported on an IRS Form 1099. Any payments made by Dominion to the Plaintiffs and Settlement Class Members shall be subject to all legally required and known garnishments, liens, wage withholding orders, or other similar obligations.

### C. Negotiating the Settlement Checks as Consent to Join FLSA Collective Action Settlement is Common Practice

Under the Second Settlement Agreement, Settlement Class Members who negotiate or deposit the Settlement Checks are consenting to join the FLSA collective action portion of this lawsuit and will compromise their rights to separately sue Dominion (and BJI, if applicable) for overtime pay under the FLSA. Allowing Settlement Class Members to participate in the settlement by the act of negotiating a settlement check ensures the most comprehensive relief for the Settlement Class Members, because they are not required to fill in and return a written consent form.[2]

Cashing-of-the-check FLSA opt-in procedures are commonly approved by federal courts throughout the country – including in this Court – as a method of requiring affirmative steps to participate in the FLSA collective. *Hall v. Dominion Energy, Inc., et al.*, No. 3:18-cv-00321-JAG (E.D.Va., Aug. 22, 2019). This method allows maximum participation by reducing the burden to participate.

This method is "calculated to maximize the collective members' participation in the settlement" and such "efforts to maximize participation suggest that this is not a settlement where defendants are attempting to buy peace by paying off the attorneys and leaving the collective members

---

[2] The Plaintiffs party to the First Settlement Agreement have already opted into this collective action and are parties. Accordingly, they do not need to negotiate the settlement award checks to join the collective.

with a recovery that is only illusory." *Besic v. Byline Bank, Inc.*, No. 16 C 8003, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015). Here, Settlement Class Members who negotiate or deposit the Settlement Checks sent to them are consenting to join the FLSA collective action portion of this lawsuit and giving up any rights to separately sue Dominion (and potentially BJI) for overtime pay under the FLSA, but Class Members who do not negotiate or deposit the Settlement Checks they receive will preserve any rights to separately sue Dominion or its subsidiaries under the FLSA. *Id.* This method is fair and aimed at maximizing the settlement and peace of mind for all parties.

## IV.    THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT.

Where the litigation arises from a private enforcement action under Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation, and where it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)). If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. *Id.* There is a 'strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 1:08CV1310(AJT/JFA), 2009 WL 3094955, at *8 (E.D. Va. Sept. 28, 2009) (quoting *Camp v. Progressive Corp.*, 2004 WL 2149079, *5 (E.D. La. Sept. 23, 2004)). "In evaluating a FLSA settlement agreement, the Court must determine three things: (1) that the FLSA issues are actually in dispute; (2) that the settlement is a reasonable compromise over the issues; and (3) if there is a clause on attorneys' fees then the award must reasonable and independently assessed." *Gagliastre v. Capt. George's Seafood Rest., LP*, 2:17CV379, 2019 WL 2288441, at *1 (E.D. Va. May 29, 2019). Based on the vigorously contested nature of this litigation over an extended period of

time, and the quality of the settlement, this Settlement is a reasonable resolution of a *bona fide* dispute in contested litigation. The Parties have entered into their Settlement Agreement as a compromise to avoid the risks, distractions, and costs that will result from further litigation.

### A. A *Bona Fide* Dispute Exists

The Settlement Agreement resolves a bona fide dispute. In the instant case, the Parties contested the claims and defenses asserted. Sziber alleged that he and the Plaintiffs/Settlement Class Members were paid a day rate regardless of the number of hours worked during a week. Dominion asserts that its pay practice is fully compliant with applicable law and that the potential class members were exempt employees of its staffing vendors. Dominion further alleges that it is merely a holding company with no employees, and that collective treatment is inappropriate for a nationwide class that includes workers staffed to any Dominion subsidiary by any staffing agency, without regard to the nature of the work. Further, as detailed below, this case was settled after two years of litigation, following extensive work by the Parties and their Counsel. Prior to the filing of this suit, Class Counsel performed extensive research and investigation regarding Dominion's pay practices, potential liability, potential settlement, and whether Dominion had acted in good faith (or willfully) in implementing its compensation policy. Ex. C at ¶¶ 14, 15.

The Parties worked to resolve various complex, disputed issues, such as issues regarding conditional certification, identification of potential class members, discovery disputes, and damage calculations. Dominion provided significant pay data and invoices. In all, Class Counsel reviewed roughly 100,000 pages of document production. After review of the document production, Class Counsel analyzed the data. Further, the Parties had to respond to unwilling staffing vendors that did not want to provide the Court-Ordered identification of the collective class. If this case was not contemporaneously settled, there would undoubtedly be extensive future work to come, including dispositive motions, depositions, associated discovery disputes, additional subpoenas, potential

interventions, questions regarding applicability of the FLSA, good faith, willfulness, decertification, pretrial motions, trial, and potential appellate issues. Ex. C at ¶ 15. Accordingly, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiff in particular) recognized that their settlement represented a compromise of the range and uncertainty of their damages.

Finally, both Sziber and Class Counsel believe that this settlement is in the best interest of both Plaintiffs and the Settlement Class Members. *See* Exs. A, B. The Parties disputed whether collective treatment of Plaintiffs' FLSA claims was appropriate in this matter, and whether Plaintiffs were entitled to liquidated damages. If the matter was not resolved by settlement, there is a risk that Dominion likely intended to move for decertification of the collective class, based on its contention that they are not similarly situated as the scope of the class was subject to its vendors' pay practice and control which differed from vendor, location, and supervisors. This process would have been time-consuming and expensive for all Parties, and should Plaintiffs have ultimately prevailed, the additional time prior to Plaintiffs and Settlement Class Members receiving relief, if any, could have been substantial.

### B. The Proposed Settlement is Fair and Reasonable.

"In reviewing the record and evaluating the strength of the case to determine whether a proposed settlement is reasonable, adequate and fair, a court should consider (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Lomascolo*, 2009 WL 3094955, at *10 (citing *Flinn v. FMC Corp.*, 528

F.2d 1169, 1173 (4th Cir. 1975)). Each of these factors favor settlement.

### 1. The Amount of Discovery Engaged in by the Parties

Both Parties conducted formal and informal discovery regarding the claims and defenses at issue, class certification, and damages. Class Counsel reviewed and analyzed roughly 100,000 pages of invoices, pay records, master services agreements, correspondence, and other relevant information.

Prior to all three mediations, the Parties jointly endeavored to obtain sufficient pay data, with Dominion producing additional records obtained from third-party suppliers. This discovery enabled the Parties to develop a comprehensive damage model to analyze the claims of the Plaintiffs and Settlement Class Members to complete comprehensive settlements, as well as to determine the likely outcome at trial. This factor weighs in favor of settlement.

### 2. The Stage Of The Proceedings

The Parties have litigated this matter for two years and have engaged in extensive motion practice, including the motion for conditional certification and responses to motions to intervene, motions to enforce compliance, motions for corrective notice and tolling, and motions to quash. *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009) ("When 'several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement.'"). The motion practice between Plaintiffs, Dominion, and third parties weighs in favor of settlement.

### 3. There is No Evidence of Fraud or Collusion

Here, the Settlements were the products of arms' length negotiations among experienced counsel and following two day-long mediations and one half day mediation before a highly-regarded mediator with wage and hour expertise. The settlements were reached after the Parties engaged in discovery for Plaintiffs' and Settlement Class Members' payroll and invoices, and after the Parties engaged in settlement discussions for a period of almost a year to negotiate and finalize the details. The Parties agree that the Settlement Agreement was in no way the product of undue influence, duress,

overreaching, collusion or intimidation. *See* Ex. C at ¶ 20. "In the absence of any evidence to the contrary, it is presumed that no fraud or collusion occurred." *Gagliastre*, 2019 WL 2288441, at *3. This factor supports approval of the Settlement.

### 4.  The Experience Of Class Counsel

Class Counsel's skill, knowledge, reputation, and experience are well-recognized in FLSA cases and Butler Royals, PLC, Bruckner Burch PLLC, and Josephson Dunlap, LLP have a national docket of FLSA cases, with litigation across the United States. FLSA collective action cases, such as this one, are the main focus of Class Counsel's docket. Class Counsel's experience has caused it to review and become familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this one and maximizes the settlement value of the case. Class Counsel's experience in this field has also resulted in a familiarity with the evidence and testimony necessary to the successful prosecution of such cases.

Likewise, Dominion's counsel, Ogletree Deakins, is a nationally recognized labor and employment defense firm, with offices across the United States, Canada, Mexico, and Europe. Both Parties were represented by skilled, knowledgeable counsel in the action and through the settlement negotiations. This factor supports approval of the Settlements.

### 5.  The Opinions of Class Counsel and Class Representative

Based on Class Counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour collective actions, Class Counsel believes that the Settlements constitute fair and reasonable results for all Parties. Ex. C, at ¶23. This factor supports approval of the Settlements. Additionally, the Named Plaintiff approved the terms of the Settlements. See Exs. A, B. In light of the foregoing, the Court should approve the Parties' proposed Settlements of this Action.

**6. The Likelihood of Success on the Merits and the Amount of the Settlements in Relation to the Potential recovery**

"This factor is of the utmost importance, "because 'if the settlement offer was grossly inadequate ... it can be adequate only in light of the strength of the case presented by the plaintiffs." *Winingear v. City of Norfolk, Va.*, 2:12CV560, 2014 WL 3500996, at *4 (E.D. Va. July 14, 2014)(citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D.Va.2009)). Here, the benefit that Plaintiffs and Settlement Class Members will receive from the settlements against the maximum they could have received if they had prevailed at trial is substantial. Ex. C at ¶23.

The Parties had numerous disputes, including (1) whether the Settlement Class Members were paid overtime for any hours worked over forty in a workweek; (2) whether the Settlement Class Members were salaried and/or exempt under one or more exceptions to the FLSA's overtime requirements, including the actual tasks performed by Settlement Class Members when they worked; (3) whether Dominion or its subsidiaries could be held liable for the alleged FLSA violations as a joint employer (4) whether certain potential class members were paid hourly and overtime or a disguised day rate; (5) whether Dominion's alleged FLSA violations were made in good faith; and (6) whether Dominion's alleged FLSA violations were willful. The resolution of each of these issues had the potential to eliminate or prejudice the litigation in Dominion's favor. The Settlements with Dominion, as the alleged holding company and on behalf of its subsidiaries, constitute outstanding results which are more than fair and reasonable for Plaintiffs and the Settlement Class Members.

With regards to the Second Settlement Agreement, an additional risk was present for the Settlement Class Members. Dominion maintained that the potential class members were actually paid hourly and overtime. Dominion contended that BJI changed its pay practices in February of 2018, and terminated its day rate scheme. On the other hand, Plaintiffs maintained BJI's "new" pay practice was nothing more than a disguised day rate. Plaintiffs contended that BJI simply made each inspector report a minimum of 12 hours for each day worked (8 hours regular time and 4 hours overtime). So

essentially Plaintiffs argued, all the BJI inspectors were paid the same rate for every day worked. Plaintiffs also relied on communications which showed Dominion reviewed these records and approved the pay practice. In response, Dominion argued that under BJI's new compensation plan, the Settlement Class Members had significant offset issues. Dominion also maintained that the BJI inspectors were appropriately paid for every hour worked, including any hours over 40 in any given week. Because of the Parties' intense disagreements and inherent risks, concessions had to be made under the Second Settlement Agreement.

Nonetheless, the proposed Settlements will provide individual settlement payments to the Settlement Class Members representing a substantial percentage of their claimed damages as calculated by Class Counsel. Ex. C, at ¶23. The proposed method of allocation (individual payments proportionate to their claimed damages) is fair to all. *See Lazy Oil Co. v. Witco,* 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (citing study conducted by the National Economic Research Associates: "the average result achieved

13

for class members was only 7% to 11% of claimed damages."). Under the First Settlement Agreement, the gross settlement represents approximately 97% of the three-year total damages. Ex. C at ¶23. Under the Second Settlement Agreement, the gross settlement represents approximately 30% of the three year total damages. Ex. C at ¶23. The recovery by the Settlement Class Members is well within the normal range for settlements of this nature which have been approved by courts nationwide, and a product of the legitimate disputes regarding the legality of the pay practices applied to Settlement Class Members. *Id.*

The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014)(where "the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated" the district court was not required to quantify the net expected value of continued litigation).

## V.    ATTORNEYS' FEES ARE REASONABLE

The FLSA provides in part that "the court shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action." 29 U.S.C. § 216(b). The Settlements agreed to by the Parties reflect this and rather than engaging in a time consuming and costly fee fight over the amount of attorneys' fees, the parties here were able to reach a resolution of the claim for attorneys' fees and costs.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a Settlement Agreement." *See Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)). When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988

14

(4th Cir. 1992). However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA settlement is not identical to the traditional lodestar analysis. *See Devine v. City of Hampton*, 2015 WL 10793424 at \*3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and use lodestar principals as a cross-check to assess fairness. *Id.*

Here, the parties negotiated at mediation and during subsequent settlement conferences that Class Counsel's attorneys' fees and costs would be set at $175,000 with regards to the First Settlement Agreement and $398,000 with regards to the Second Settlement Agreement. This figure is well in line with awarded attorneys' fees in other similar collective/class action cases alleging the non-payment of overtime under the FLSA. *See, e.g., Winingear*, 2014 WL 3500996, at \*1 (awarding 38.44% ($1,230,250.00) in fees and costs on a $3,200,000 FLSA settlement and noting that "this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery"); *Hall*, No. 3:18-cv-00321 Doc. 92 (approving 35% of the gross settlement amount); *Devine*, 2015 WL 10793424, at \*3 (finding 33.98% ($1,189,167.00) in fees and costs on a $3,500,000 FLSA settlement to be reasonable); *see also Gagliastre*, 2019 WL 2288441, at \*5 ("Fees awarded under "the percentage-of-recovery" method in settlements under $100 million have ranged from 15% to 40%); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018)(finding 33.39% percent award is within the range of percentages that have been approved in other cases in the Fourth Circuit); *Hooker v. Sirius XM Radio, Inc.*, No. 4:13-CV-003, 2017 WL 4484258, at \*2 (E.D. Va. May 11, 2017)(TCPA claim; awarding 35% fees).

Class Counsel's attorneys' fees are part of the bargained-for settlement. The Parties agreed to set Class Counsel's fees. This is the same agreement that the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a

settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014); *Blanchard v. Forrest*, CIV. A. 93-3780, 1996 WL 28526 (E.D. La. Jan. 23, 1996) (overruling the magistrate's modification to consent judgment because courts lack authority to modify a settlement agreement).

"[A]ny process of judicial review and approval of stipulated attorneys' fees in the event of a settlement of civil rights litigation is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018) (reversing district court's reduction of attorney fees from the agreed-upon settlement amount in an FLSA action).

Counsel's fee request should be approved because it is reasonably based on the market rate. Ex. C at ¶27.

## VI.    THE REQUESTED SERVICE AWARD SHOULD BE APPROVED.

The Parties' agreed Settlements contemplate providing a service award to Named Plaintiff Christopher Sziber of $20,000.00 and $5,000 each to Opt-in Plaintiffs Kenneth Gibbons and Robert Dively, to acknowledge their time, effort, and risk expended in helping to achieve a successful Settlement. These payments shall issue along with a Form 1099.

Service awards are well-suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers. "Courts around the country have approved substantial incentive payments in FLSA collective actions

and other employment-related class actions." *DeWitt v. Darlington Cty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *14 (D.S.C. Dec. 6, 2013)(collecting cases). "To determine whether an incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Hoffman v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 WL 1176641, at *3 (D. Md. Mar. 23, 2010)(internal citations omitted).

The proposed Service Awards are well within the range of awards that courts within this judicial circuit regularly and routinely grant under these circumstances. *See, e.g.*, *Kirkpatrick*, 352 F. Supp. 3d at 507 (awarding $10,000 to the named plaintiff); *McCurley v. Flowers Foods, Inc.*, No. 5:16-CV-00194-JMC, 2018 WL 6650138, at *8 (D.S.C. Sept. 10, 2018)(providing a service award of $25,000); *Shaver v. Gills Eldersburg, Inc.*, No. 14-3977-JMC, 2016 WL 1625835, at *1 (D. Md. Apr. 25, 2016)(awarding $8,500.00 to the named plaintiff and $2,000.00 each to two opt-in plaintiffs).

Here, Sziber, Gibbons, and Dively took significant actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to the Plaintiffs and Settlement Class Members. For these reasons, a service reward to these individuals is justified under the circumstances of this case.

## VII.    CONCLUSION.

The Parties reached the Settlements as the result of contested litigation, and they resolve a *bona fide* dispute. The Parties engaged in lengthy negotiations, analyzed all pertinent information, and resolved the issues between them with the assistance of an experienced wage and hour mediator. The Settlements are eminently fair, reasonable, and adequate, and provides both Plaintiffs and the Settlement Class Members with significant monetary relief in a contested matter. Finally, the Settlement Agreements fulfill the relevant criteria within this Circuit's multi-factor test. For these reasons, the Court should approve the Parties' Agreements. Accordingly, the Parties ask that the Court

dismiss the claims in this lawsuit, brought by Plaintiff on behalf of himself and all others similarly situated, with prejudice in accordance with the Parties' proposed order.

Dated: March 1, 2022                    Respectfully Submitted,

CHRISOPHER SZIBER, Individually and for Others Similarly Situated

By:  */s/ Zev H. Antell*
Harris D. Butler (VSB No. 26483)
Zev H. Antell (VSB No. 74634)
**BUTLER CURWOOD, PLC**
140 Virginia Street, Suite 302
Richmond, Virginia 23219
804-648-4848 – Telephone
804-237-0413 – Facsimile
Email:  harris@butlercurwood.com
          zev@butlercurwood.com


Michael A. Josephson
Texas Bar No. 24014780
Andrew Dunlap
Texas Bar No. 24078444
Richard M. Schreiber
Texas Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
Email:  mjosephson@mybackwages.com
          adunlap@mybackwages.com
          rschreiber@mybackwages.com
(admitted *pro hac vice*)

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
Email:  rburch@brucknerburch.com
(admitted *pro hac vice*)

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**
18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1ˢᵗ day of March, 2022, I electronically filed the foregoing, using

the CM/ECF system, and provided notice per the Federal Rules of Civil Procedure:

Jimmy F. Robinson, Jr., Esquire
jimmy.robinson@ogletreedeakins.com
J. Clay Rollins, Esquire
clay.rollins@ogletreedeakins.com
Bret G. Daniel, Esquire
bret.daniel@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, Virginia  23219

By:  */s/ Zev H. Antell*
Zev H. Antell (VSB No. 74634)
BUTLER CURWOOD, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone (804) 648-4848
Facsimile (804) 237-0413
Email:  zev@butlercurwood.com